UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BARBARA MYERS, | ) | |
| | ) | |
| Plaintiff, | ) | 11 C 231 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| CONDOMINIUMS OF EDELWEISS, INC., an Illinois corporation, EUGENE SMACIARZ, CLORINDA LOPEZ, JUDITH A. GALATI, MARY LOU DEGEDIO, and RENEE WEIGHILL, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Barbara Myers brought this suit against Condominiums of Edelweiss, Inc. ("Condominiums"), the governing body of her residential development, and five members of its Board of Managers, Eugene Smaciarz, Clorinda Lopez, Judith A. Galati, Mary Lou Degedio, and Renee Weighill, alleging violations of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, and state law claims for intentional and negligent infliction of emotional distress. Doc. 1. Months after the case was filed, Myers moved for judgment on the pleadings on the FHA claim, and Defendants cross-moved for summary judgment on all three claims. Docs. 31, 33. The court denied both motions, 2011 WL 4337018 (N.D. Ill. Sept. 14, 2011), and the parties proceeded to discovery. Now before the court is Myers's motion for summary judgment on the FHA claim and Defendants' cross-motion for summary judgment on all three claims. Docs. 62, 70. For the following reasons, Myers's motion is denied and Defendants' motion is granted in part and denied in part.

**Background**

Defendants' Local Rule 56.1(b)(3)(B) response, Doc. 73, fails to address ¶¶ 1-3, 5-28, 31-32, 39-42, 47, and 49-51 of Myers's Local Rule 56.1(a)(3) statement, Doc. 65. Accordingly, the facts set forth in those paragraphs are deemed admitted. *See* N.D. Ill. Local Rule 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880, 884-85 (7th Cir. 2012); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Smith v. Lamz*, 321 F.3d 680, 682-83 (7th Cir. 2003). In certain instances, Defendants moved "to strike" particular assertions in Myers's Local Rule 56.1(a)(3) statement. Doc. 73 at ¶¶ 29-30, 33-38, 43-46, 48, 52. Because Defendants' arguments are unpersuasive, those paragraphs of Myers's Local Rule 56.1(a)(3) statement are deemed admitted as well.

Myers's Local Rule 56.1(b)(3)(B) response, Doc. 79, to Defendants' Local Rule 56.1(a)(3) statement, Doc. 72, in some instances fails to cite the record or other material to support her denial of Defendants' factual assertions. Doc. 79 at ¶¶ 5, 7, 9. Under Local Rule 56.1(b)(3)(B), a movant's asserted fact is deemed admitted despite a non-movant's denial if evidence cited by the movant's Local Rule 56.1(a)(3) statement supports the factual assertion and the non-movant's Local Rule 56.1(b)(3)(B) response cites no evidence to support its denial. *See* N.D. Ill. L.R. 56. 1(b)(3)(B) (requiring the non-movant to file "(3) a concise response to the

movant's statement that shall contain: … (B) a response to each numbered paragraph in the moving party's statement, *including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon*") (emphasis added); *Smith*, 321 F.3d at 682-83; *Leibforth v. Belvidere Nat'l Bank*, 337 F.3d 931, 934 n.1 (7th Cir. 2003); *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 & n.4 (7th Cir. 2000). Accordingly, ¶¶ 5, 7, and 9 of Defendants' Local Rule 56.1(a)(3) statement are deemed admitted.

When considering Myers's summary judgment motion, the facts are considered in the light moved favorable to Defendants, and when considering Defendants' summary judgment motion, the facts are considered in the light most favorable to Myers. *See In re United Air Lines, Inc.*, 453 F.3d 463, 468 (7th Cir. 2006) ("With cross summary judgment motions, we construe all facts and inferences therefrom in favor of the party against whom the motion under consideration is made.") (internal quotation marks omitted). That said, the following facts are undisputed, either by the parties' agreement, because a party's objection to the fact fails to comply with Local Rule 56.1(b)(3), or because the fact simply reflects a historical account of what a person said or a document states.

A. **The Parties and Procedural History**

In 1997, Myers purchased a condominium unit in a residential development in Palos Park, Illinois, called the Condominiums of Edelweiss. Doc. 79 at ¶ 1. Myers has resided in the unit since then, and her husband resided with her until he died in August 2010. Doc. 65 at ¶ 7. Condominiums is the development's governing body. *Id.* at ¶ 2; Doc. 79 at ¶ 2. The individual defendants are current or former board members of Condominiums. Doc. 79 at ¶ 2.

In 1992, five years before Myers purchased her unit, Condominiums adopted and duly recorded an Amendment to the Condominium Declaration prohibiting pets, which will be called the "no-pet policy." *Id*. at ¶ 3. Despite the no-pet policy, Myers kept cats in her unit. *Id*. at ¶ 4. Defendants did not know this until April 2008, when Lopez noticed a cat in the window of Myers's unit. *Id*. at ¶ 5. Lopez told Myers that the cats must be removed, but Myers refused. *Id*. at ¶ 5. During that conversation, Myers did not mention anything about a medical condition that required her to have cats. *Ibid*.

On May 16, 2008, Myers received a letter from Condominiums's attorneys demanding the cats' removal and threatening an eviction suit if she refused. Doc. 65 at ¶ 11; Doc. 79 at ¶ 6. On May 28, 2008, Myers received a 30-day Notice and Demand to remove the cats from the premises. Doc. 65 at ¶ 12. Days later, Condominiums received a letter from Myers's attorney stating that Myers no longer had a cat in her unit. Doc. 79 at ¶ 7; Doc. 72-8. The letter did not mention that the cats were medically necessary support animals for Myers. *Ibid*.

Notwithstanding the representation in her attorney's letter, Myers has kept or maintained a cat or cats in her unit "for the entire time" she resided there. Doc. 65 at ¶ 8. On June 5, 2008, Myers placed a letter from her family physician, Dr. Susan Locke, in the mailbox used for the collection of assessments. Doc. 79 at ¶ 8. The letter states: "To Whom It May Concern: Barbara Myers is a longtime patient of mine. It is imperative that she keep pets [for] emotional support. This is medically necessary per the Americans with Disabilities Act. Thank you for your cooperation." *Ibid*.

In a letter written by their attorney, Gerald J. Sramek, on July 31, 2008, Defendants acknowledged receiving Dr. Locke's letter. Doc. 65 at ¶ 16. Sramek's letter recognized that Dr.

Locke had opined that Myers needed her cats for "emotional support" and that Dr. Locke believed Myers was justified in keeping the cats "under the Americans with Disabilities Act." *Id*. at ¶ 17; Doc. 65-5. But Sramek disagreed with Dr. Locke's position and denied the request for an accommodation. Doc. 65 at ¶ 18; Doc. 65-5. The letter also threatened Myers with further legal action if the cats were not removed from her unit. *Ibid*.

No board member ever communicated with Myers about her medical condition or her request to keep cats in her unit. Doc. 65 at ¶ 41. Condominiums never sought or obtained any medical opinion concerning Myers prior to denying her request for an accommodation or prior to pursuing the below-referenced suit against her in state court. *Id*. at ¶ 42. There are no minutes from any formal or informal board meetings relating to the decision to sue Myers or to deny her request for an accommodation. *Id*. at ¶ 43. Myers was never given notice of any board meeting in which the directors would be discussing her request for an accommodation. *Id*. at ¶ 44. Condominiums's Declaration and Bylaws require that any matter involving an alleged violation of Condominiums's rules be addressed at a meeting open to all unit members. *Id*. at ¶ 45. The Declaration and Bylaws also require that the board reasonably accommodate the needs of a unit owner with a disability. *Id*. at ¶ 46.

On October 24, 2008, Condominiums filed a forcible entry and detainer action in Illinois state court seeking Myers's eviction. Doc. 65 at ¶¶ 19-20; Doc. 79 at ¶ 10; *Condominiums of Edelweiss, Inc. v. Myers*, No. 08 M5 1993 (Cir. Ct. Cook Cnty, Ill.). Condominiums amended the complaint on November 18, 2008, and on December 23, 2008, the state court dismissed the amended complaint. Doc. 65 at ¶¶ 21-22; Doc. 79 at ¶ 10. On January 20, 2009, Condominiums filed a second amended complaint, which sought only injunctive relief. Doc. 65 at ¶ 23; Doc. 79

at ¶ 10. Myers answered and asserted an affirmative defense under the FHA. Doc. 65 at ¶ 24. On October 6, 2009, Condominiums's attorneys deposed Myers and her husband. *Id*. at ¶ 25. On February 11, 2010, Condominiums's attorney deposed Dr. Cathleen Amador, whom Myers retained to evaluate her in anticipation of trial. *Id*. at ¶¶ 26, 29.

After Dr. Amador's deposition, Myers's counsel renewed her request that she be allowed to keep her cats as an accommodation, but Condominiums refused. Doc. 65 at ¶ 31. The case proceeded to a bench trial. *Id*. at ¶ 33. Condominiums called Myers to testify as an adverse witness. *Id*. at ¶ 32. On February 25, 2010, the state court granted judgment to Myers. *Id*. at ¶ 38; Doc. 65-13. While finding that Condominiums's no-pet rule "was valid and enforceable," the court denied Condominiums's request for an injunction, with this explanation:

> [t]he court … must balance the equities between the parties and when doing so notes that [Myers] has had a cat in her unit for 11 years without any claim of violation or nuisance and the cat is needed as an accommodation for her emotional illness. Using a balancing test the defendant prevails. Therefore, the complaint for Injunctive Relief and Attorneys fees and costs [is] denied.

Doc. 65-13 at 4-5; Doc. 65 at ¶¶ 38-39; Doc. 79 at ¶ 11.

### B. Myers's Personal and Medical History

As a child, Myers was a victim of physical and sexual abuse by her father and brother. Doc. 79 at ¶¶ 12, 14. Myers had a pet dog as a little girl and a cat for three years in her early teens. *Id*. at ¶ 28. She had no pets from age 14 until she got married at 23. *Ibid*. After getting married, Myers had three different dogs. *Ibid*. Before purchasing her condo unit in 1997, Myers had a cat named "Tippy." *Id*. at ¶ 29. When Tippy died, she bought cats named "Maggie" and

"Mr. Kitty." *Ibid*. When Maggie died about five years after Myers moved into her condominium, she bought another cat, "Carmel Cream." *Ibid*.

Myers asserts that she finds the cats to be a comfort for her, and they have helped her through events like the death of her husband. *Ibid*. Myers states that she uses the cats as a coping mechanism to deal with her emotional anxiety. *Ibid*. Myers was in Florida from March 2007 to October 2007 without her cats. *Id*. at ¶ 30. In 2008, Myers was separated from her cats for approximately three months while they were being watched by a friend staying in her unit. *Ibid*. When separated from the cats, Myers missed them terribly and would call every day to make sure they were okay. *Ibid*.

Myers has seen Dr. Locke since 1985. *Id*. at ¶ 19. Dr. Locke treated Myers once for depression in 1999 and prescribed her Wellbutrin. *Id*. at ¶¶ 19, 22. There was no follow-up to the 1999 treatment for depression. *Id*. at ¶ 19. Myers has had bouts of depression over the years, but would always keep busy and work her way out of it. *Ibid*. On June 5, 2008, Myers asked Dr. Locke to "write a letter saying there is a law that they can't do this to me." *Id*. at ¶ 21. Dr. Locke wrote the letter, which is quoted above, based upon Dr. Locke's view that Myers would have increased medical problems and symptoms if she could not have her pets. Doc. 65 at ¶ 15. Other than the 1999 visit and the June 5, 2008 visit, Dr. Locke's records do not reflect treating Myers for any emotional or psychological issues. Doc. 79 at ¶ 22. Dr. Locke's notes from the June 5, 2008 visit read: "acute depression. Situational. Reassured, note written so patient can keep pets. Very stressful with increased medical problems and symptoms if patient must leave pets." *Id*. at ¶ 23. Dr. Locke has a general family practice and does not have a background in psychological testing or treatment. *Id*. at ¶ 22.

In preparation for the state court trial, Myers underwent two days of evaluation by Dr. Amador, who issued a written report of her findings and diagnoses. Doc. 65 at ¶ 26. Dr. Amador diagnosed Myers as suffering from "Anxiety Disorder, Not Otherwise Specified," and "Adjustment Disorder With Mixed Anxiety and Depressed Mood." *Id*. at ¶ 27. Dr. Amador stated that Myers suffered from physical and sexual abuse as a child, and that she had a history of asthma, a stroke, and congestive heart failure. *Ibid*. Dr. Amador concluded that caring for her cats was important in helping Myers to deal with her anxiety, and that the cats were "therapeutic" and went beyond the benefits that pets provide to the general population. *Id*. at ¶ 28. On February 11, 2010, Dr. Amador testified at her deposition in the state court action that Myers "has a significant problem with anxiety that interferes with her function, that interferes with her life, that causes her distress." *Id*. at ¶ 29. Dr. Amador stated that Myers's condition caused enough of an impairment that it substantially limited one or more of her major life activities, that she was handicapped, and that she was emotionally dependent on the cats. *Id*. at ¶ 30. Dr. Amador never prescribed Myers any medication. Doc. 79 at ¶ 25.

For purposes of this litigation, Defendants retained Dr. Dennis J. Niswonger, a licensed clinical psychologist, to examine Myers and render an opinion about her alleged disability. *Id*. at ¶ 27. Dr. Niswonger met with Myers on two occasions, took a medical and personal history, and performed certain tests and evaluations. *Ibid*. Dr. Niswonger did not use the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, to reach his findings. Doc. 65 at ¶ 50. Dr. Niswonger found that Myers's "early childhood trauma has made a negative impact on her view of people, the world, and her approach to life." Doc. 78-3 at 5. Dr. Niswonger also found that "[i]n relationships, she may be moody and unpredictable which could cause strain or stress

toward others," and that "[f]orming and maintaining relationships most likely are difficult for her at times because of her feelings of alienation." *Ibid*. According to Dr. Niswonger, "there are clearly psychological flaws in [Myers's] personality that are problematic," and Myers "struggles to experience happiness and satisfaction in her life." *Id*. at 6. Dr. Niswonger recommended that Myers "would benefit by seeking psychotherapy" and "medication management from a psychiatrist." *Ibid*. Dr. Niswonger's report concluded that "[t]he pets are clearly a comfort to her, however, she does not require the cats due to a disability. In my opinion, Barbara Myers is not disabled under the provisions of the Fair Housing Act, section 504." *Ibid*.

## Discussion

**I.     The Parties' Cross-Motions on the Fair Housing Act Claim**

The FHA makes it illegal "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities with such dwelling, because of a handicap" of a person residing in the dwelling. 42 U.S.C. § 3604(f)(2). The FHA specifies that such discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B); *see Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 748 (7th Cir. 2006) (en banc). "To prevail on an FHA accommodation claim, a [1] disabled plaintiff must establish that he [2] requested and [3] was denied an accommodation that was both [4] reasonable and [5] necessary to afford him an equal opportunity to use and enjoy his dwelling." *United States v. WHPC-DWR, LLC*, 491 F. App'x 733, 736 (7th Cir. 2012); *see also Wisconsin Cmty. Servs., Inc.*, 465 F.3d at 749; *DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*,

453 F.3d 1175, 1179 (9th Cir. 2006) (holding that to prevail on an FHA accommodation claim, a plaintiff must show: "(1) that the plaintiff or his associate is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation."); *Jankowski Lee & Assocs. v. Cisneros*, 91 F.3d 891, 896 (7th Cir. 1996).

### A. Myers's Summary Judgment Motion

As the plaintiff, Myers is entitled to summary judgment only if the undisputed facts establish each element of her FHA accommodation claim. *See WHPC-DWR, LLC*, 491 F. App'x at 736; *Wisconsin Cmty. Servs., Inc.*, 465 F.3d at 749; *Jankowski Lee & Assocs.*, 91 F.3d at 896. To the extent that Myers seeks to rely on the state court's favorable ruling in the forcible entry and detainer case to establish certain elements of her claim, the court rejects collateral estoppel/issue preclusion for the reasons given in its previous opinion. 2011 WL 4337018, at *2. And on the present record, Myers's motion is denied because there are genuine disputes as to whether she qualifies as an individual with a disability for purposes of 42 U.S.C. § 3604(f)(2), as well as whether her requested accommodation—keeping cats in her unit in contravention of the no-pet policy—was reasonable and necessary.

The question whether a plaintiff qualifies as a person with a disability "is to be decided on a case-by-case basis." *Dadian v. Vill. of Wilmette*, 269 F.3d 831, 837 (7th Cir. 2001); *see also Byrne v. Bd. of Educ., Sch. of West Allis-West Milwaukee*, 979 F.2d 560, 565 (7th Cir. 1992). As set forth in the Background section, Myers has adduced evidence (Dr. Amador's opinion,

Myers's description of her condition) suggesting that her emotional and mental health are sufficiently fragile as to substantially limit one or more major life activities, but Defendants have adduced evidence (Dr. Niswonger's opinion, the fact that Myers was able to be apart from her cats for several months, the fact that Myers did not tell Defendants that the cats were medically necessary support animals when the matter first came to a head in April and May 2008) to the contrary. Where, as here, there is "evidence which might cause reasonable jurors to reach different conclusions" regarding whether the plaintiff has a disability, the issue is "one for the jury to determine." *Byrne*, 979 F.2d at 566; *see also Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 975 (7th Cir. 2009) (reversing summary judgment for the defendant on an accommodation claim due to a "genuine issue of material fact" regarding the plaintiff's disability status); *Burns v. Chi. Park Dist.*, 2002 WL 31018363, at *1 (N.D. Ill. Sept. 9, 2002) (denying summary judgment due to a "genuine issue of material fact as to the existence of a 'disability'"); *Baumgardner v. Cook Cnty.*, 2001 WL 881246, at *5 (N.D. Ill. Aug. 2, 2001) (same).

Another genuine dispute is presented by the question whether Myers's requested accommodation was reasonable and necessary. "Whether a requested accommodation is reasonable or not is a highly fact-specific inquiry and requires balancing the needs of the parties." *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002); *see also Dadian*, 269 F.3d at 838 ("[w]hether a requested accommodation is reasonable is highly fact-specific"); *Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591, 601 (7th Cir. 1998) ("The reasonableness of a requested accommodation is a question of fact."); *Jankowski Lee & Assocs.* 91 F.3d at 896 ("Whether an accommodation is 'reasonable' is a question of fact, determined by a close examination of the particular circumstances."); *Bronk v. Ineichen*, 54 F.3d

425, 430 (7th Cir. 1995) (determination of whether an accommodation is reasonable and necessary "properly belongs to the jury"). On this record, there are genuine disputes regarding Myers's medical need to keep cats in her residence and the need for Condominiums to strictly enforce the no-pet policy. As a result, reasonable jurors could disagree as to whether Myers's requested accommodation was reasonable and necessary. *See EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797, 802-803 (7th Cir. 2005) (reversing summary judgment on a failure to accommodate claim where there was "a genuine issue of material fact" as to whether the plaintiff had a disability and whether the requested accommodation was reasonable); *Kraus v. Shinseki*, 846 F. Supp. 2d 936, 949-50 (N.D. Ill. 2012) (denying summary judgment on a failure to accommodate claim because "[o]n this record, and in light of the evidence concerning Kraus's disability, a reasonable trier of fact could conclude that Kraus's continued requests for a transfer were reasonable").

### B. Defendants' Motion for Summary Judgment

Defendants are entitled to summary judgment on Myers' FHA claim only if the undisputed facts establish Myers's inability to satisfy any one of the elements of the claim. As discussed above, there are genuine disputes as to whether Myers has a qualifying disability and whether her requested accommodation was reasonable and necessary. With respect to the other two elements of the FHA claim, a reasonable jury could find that Myers requested an accommodation and that Defendants denied her accommodation request. Doc. 65 at ¶¶ 13, 17-18, 31; Doc. 65-5; Doc. 79 at ¶ 8; Doc. 79 at 23 ¶¶ 1-2.

Although Defendants argue that Myers did not properly request an accommodation, Doc. 71 at 4-5, they offer no supporting authority, thus forfeiting the point. *See Milligan v. Bd. of Trs.*

*of S. Ill. Univ.*, 686 F.3d 378, 386 (7th Cir. 2012); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007); *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003); *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995). Defendants are wrong in any event. Myers delivered to Defendants a letter from her physician, Dr. Locke, requesting an accommodation, and such a letter can suffice as a request for a reasonable accommodation. *See Bultemeyer v. Fort Wayne Comty. Schs.*, 100 F.3d 1281, 1286 (7th Cir. 1996) (reversing summary judgment for the defendant on a reasonable accommodation claim, holding that the plaintiff had requested a reasonable accommodation when he "delivered [his doctor's] note in an attempt to explain to [the defendant] what he needed"); *Bond v. Sheahan*, 152 F. Supp. 2d 1055, 1072 (N.D. Ill. 2011) (a reasonable accommodation request need not state "the magic words 'reasonable accommodation'"). Given this, a reasonable jury could find that Dr. Locke's letter made a request for an accommodation and that Defendants denied the request.

In sum, because a reasonable jury could find for Myers on each element of her FHA claim, Defendants are not entitled to summary judgment on that claim.

## II. Defendants' Motion on the Intentional Infliction of Emotional Distress Claim

To prevail on an intentional infliction of emotional distress ("IIED") claim under Illinois law, a plaintiff must demonstrate that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that his conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress. *See Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604-05 (7th Cir. 2006); *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997); *Feltmeier v. Feltmeier,* 798

N.E.2d 75, 80 (Ill. 2003); *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988); *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 866 (Ill. App. 2000). Liability is triggered only when the defendant's conduct is so outrageous and extreme as to "go beyond all possible bounds of decency." *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976) (internal quotation marks omitted). "[M]ere insults, indignities, threats, annoyances, petty oppressions or trivialities" are insufficient. *Ibid.*; *see also Van Stan*, 125 F.3d at 567 (same).

Defendants challenge only the first element of the IIED claim, so Myers can survive summary judgment by establishing a genuine question as to whether Defendants' conduct was extreme and outrageous. "Whether conduct is extreme and outrageous is evaluated on an objective standard based on all of the facts and circumstances." *Thomas v. Fuerst*, 803 N.E.2d 619, 625 (Ill. App. 2004); *see also McGrath*, 533 N.E.2d at 811 ("The outrageousness of a defendant's conduct must be determined in view of all the facts and circumstances pleaded and proved in a particular case."). The inquiry turns on these factors: (1) the power and control the defendant had over the plaintiff; (2) whether the defendant reasonably believed his objective was legitimate; and (3) the defendant's awareness that the plaintiff is particularly susceptible to emotional distress. *See McGrath*, 533 N.E.2d at 809-11; *see also Fox v. Hayes*, 600 F.3d 819, 842 (7th Cir. 2010) ("[a]n important factor" in IIED claims "is whether a defendant abused a position of authority"). Significant here, "[b]ehavior which (though rude, abrasive or extremely inconsiderate) may not otherwise be actionable may be deemed outrageous if the defendant knows that the plaintiff is peculiarly susceptible to emotional distress." *McGrath*, 533 N.E.2d at 811; *see also Pub. Fin. Corp.*, 360 N.E.2d at 769 ("Knowledge that another is peculiarly

susceptible to emotional distress may make a person's conduct actionable when it otherwise would not be.").

A reasonable jury on this record could find that Defendants' conduct was extreme and outrageous. Construed in Myers's favor, the record shows that: Defendants took advantage of their management role to pursue an eviction action against Myers following her request for an accommodation; Defendants did not follow their own bylaws and procedures while pursuing the eviction action; Defendants also did not communicate with Myers about her medical condition or seek a medical opinion regarding her claims prior to suing her; and, following the letter from Dr. Locke, Defendants were on notice that Myers may be particularly susceptible to emotional distress. Defendants' decision to pursue an eviction action instead of other, less disruptive alternatives, considered along with their knowledge of Myers's fragile emotional health, raises a triable question as to whether Defendants abused their authority in a manner rising to the level of extreme and outrageous conduct. *See Obi v. Chase Home Fin., LLC*, 2010 WL 4810609, at *5 (N.D. Ill. Nov. 19, 2010) (holding that the plaintiff stated a plausible IIED claim based on an alleged wrongful eviction); *Matthews v. Homecoming Fin. Network*, 2005 WL 2387688, at *7 (N.D. Ill. Sept. 26, 2005) (same).

### III. Defendants' Motion on the Negligent Infliction of Emotional Distress Claim

Illinois law recognizes claims for negligent infliction of emotional distress. *See Parks v. Kownacki*, 737 N.E.2d 287, 296-97 (Ill. 2000); *Wallis v. Card Servs. Int'l, Inc.*, 2012 WL 1866374, at *5 (N.D. Ill. May 22, 2012). Direct victims of negligent infliction of emotional distress are "the persons that the negligent conduct has directly affected." *Barnes v. Anyanwu*, 391 F. App'x 549, 552 (7th Cir. 2010). Under Illinois law, "a direct victim of alleged negligent

-15-

infliction of emotional distress must satisfy the impact rule. Under the impact a rule, a direct victim may not recover for emotional distress suffered as a result of the defendant's alleged negligence unless the emotional distress was accompanied by a contemporaneous physical injury to or impact on the plaintiff." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 703 (7th Cir. 2009) (internal citation and quotation marks omitted); *see also Barnes*, 391 F. App'x at 554 (same); *Cleveland v. Rotman*, 297 F.3d 569, 574 (7th Cir. 2002) (same).

Here, Myers is the direct victim of Defendants' alleged negligence. Yet Myers has adduced no facts that would allow a reasonable jury to find that she suffered "a contemporaneous physical injury or impact" due to Defendants' alleged negligence. *Barnes*, 391 F. App'x at 554. As a result, Myers's negligent infliction of emotional distress claim fails as a matter of law. *See Lewis*, 561 F.3d at 703; *Cleveland*, 297 F.3d at 574; *Wallis*, 2012 WL 1866374, at *5 ("Wallis's alleged injuries—'immense emotional pressure,' the loss of business, reputation, etc.—do not constitute 'contemporaneous physical contact' or 'physical injury or illness' sufficient to state a claim for negligent infliction of emotional distress"); *Dobrzeniecki v. Salisbury*, 2012 WL 1531278, at *14 (N.D. Ill. Apr. 27, 2012) ("this court is required to follow the Seventh Circuit's repeated rulings that the impact rule still applies").

**IV.     Defendants' Motion Regarding the Claims Against Smaciarz**

Defendants argue that Smaciarz is entitled to judgment because he "was not a board member at the time of the alleged events nor at the time of the filing of the present lawsuit." Doc. 71 at 10. Myers offers no response to that argument in her summary judgment opposition brief, Doc. 78, thus forfeiting the point. *See Milligan*, 686 F.3d at 386; *Alioto*, 651 F.3d at 721;

*Wojtas*, 477 F.3d at 926; *Holm*, 326 F.3d at 877; *Stransky*, 51 F.3d at 1335. Accordingly, Smaciarz is awarded summary judgment.

## Conclusion

For the foregoing reasons, Myers's partial motion for summary judgment is denied, and Defendants' motion for summary judgment is granted in part and denied in part. Defendants are awarded summary judgment on Myers's negligent infliction of emotional distress claim, and Smaciarz is awarded summary judgment on all claims against him. Myers's other claims will proceed to trial, which is set to commence on December 2, 2013.

August 29, 2013

United States District Judge